**SOUTHERN UTAH WILDERNESS ALLIANCE, non-profit corporation; Friends of the Dixie, non-profit corporation; Native Ecosystems Council, a non-profit corporation, Plaintiffs,**

v.

**UNITED STATES FOREST SERVICE; Hugh Thompson, Supervisor, Dixie National Forest, Defendants.**

**Civ. No. 94–C–917G.**

United States District Court, D. Utah, Central Division.

July 28, 1995.

Heidi J. McIntosh and Thomas S. Groene, for plaintiff.

Stephen L. Roth, Margo Miller and Robert Foster, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction. Heidi J. McIntosh and Thomas S. Groene represented the plaintiffs, and Stephen L. Roth, Margo Miller, and Robert Foster rep-

resented the defendants. The parties presented evidence and testimony to the Court on July 6–7, 1995, and oral arguments on July 21, after which the Court took the matter under advisement. Now being fully advised, the Court renders its Memorandum Decision and Order, together with simultaneously promulgated Findings of Fact and Conclusions of Law which are incorporated herein.

### Factual Background

This case arises out of the decision by the United States Forest Service ("Forest Service") to implement a plan of action to reduce the further spread and infestation of the Dixie National Forest ("DNF") by the Spruce Bark Beetle. The current beetle infestation is now at epidemic proportions, and has caused the death of many of the old-growth, mature Engelmann spruce, constituting roughly seventeen million board feet ("MMBF") within the Sidney Valley area of the DNF. In response to this infestation, the Forest Service initiated the Sidney Valley Recovery Project to study the issues presented and to propose a solution. The Forest Service prepared a detailed Environmental Assessment in connection with the analysis of the issues. Hugh Thompson, Supervisor of the Dixie National Forest, reviewed the Environmental Assessment, and issued a Decision Notice and a Finding of No Significant Impact ("FONSI") on March 9, 1994. Mr. Thompson also adopted a treatment plan (the "Proposed Action") to reduce the vulnerability of remaining stands and to preserve a portion of the preexisting recreation and scenic quality of the Sidney Valley.

Plaintiffs seek to enjoin implementation of the treatment plan, and challenge the finding by the Forest Supervisor based upon the Environmental Assessment that there would be no significant environmental impact resulting from the proposed action. Plaintiffs also urge injunctive relief based upon alleged noncompliance with legal requirements governing timber cutting, standards set forth in the governing forest plan, and violations of the Clean Water Act. Plaintiffs request that this Court enjoin implementation of the treatment plan until the defendants have complied with all requirements of the Nation-

al Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), and the Clean Water Act.

### DISCUSSION

#### A. Standard of Review

There are two standards of review involved in this case: the standard to be met before issuance of a preliminary injunction, and the standard to be met to overrule an agency's decision under the judicial review provisions of the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, *et seq.*

#### *Preliminary Injunction*

With regard to standards for entry of a preliminary injunction, plaintiffs must establish both their standing to challenge the proposed action, as well as the requirements of a preliminary injunction. To establish standing to challenge the Environmental Assessment, plaintiffs must show that they have " 'suffer[ed] legal wrong [or that they] are adversely affected or aggrieved by [agency] action within the meaning of a relevant statute.' " *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990) *(quoting* 5 U.S.C. § 702); *see also Southern Utah Wilderness Alliance v. Thompson,* 811 F.Supp. 635 (D.Utah 1993). This court has previously held that recreational use and aesthetic enjoyment are among the interests that NEPA and NFMA were designed to protect. *See Thompson,* 811 F.Supp. at 640. In their Amended Complaint, plaintiffs have stated specifically that the members of the respective plaintiff groups use and enjoy the Dixie National Forest. This Court is satisfied as a matter of law that plaintiffs fall within the statutory definition of persons who have standing to challenge the Environmental Assessment and the FONSI.

With respect to requirements for issuance of a preliminary injunction, the Tenth Circuit has laid out a four-prong test which the moving party must meet in order to qualify for injunctive relief:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues;

(3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction will cause the opposing party; and (4) a showing that the injunction, if issued, will not be adverse to the public interest.

*Hartford House, Ltd. v. Hallmark Cards, Inc.,* 846 F.2d 1268, 1270 (10th Cir.1988) (*quoting Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980)). In the Tenth Circuit, the requirement of showing a substantial likelihood of prevailing on the merits is relaxed when the movant satisfies the other three requirements. Once the other three are met, "[t]he movant need only show 'questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation.'" *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1199 (10th Cir.1992) (*quoting Otero Sav. & Loan Ass'n v. Federal Reserve Bank,* 665 F.2d 275, 278 (10th Cir.1981)).

### Review of Agency Decisions

■ In order to show likelihood of success on the merits for issuance of a preliminary injunction, plaintiffs must successfully challenge the Environmental Assessment and show that a full Environmental Impact Statement should be prepared. To show this, the plaintiffs must bring their challenge of the agency's decision under the standards of judicial review set forth in the APA.[1]

■ With regard to the APA standard of review, the Supreme Court stated in *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350, 109 S.Ct. 1835, 1846, 104 L.Ed.2d 351 (1989), that NEPA does not mandate a particular outcome, but rather simply prescribes the necessary process. As such, a court reviewing an agency's decisions should not substitute its judgment for that of the agency as to the environmental consequences of the agency's actions. *Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21, 49 L.Ed.2d 576 (1976). Rather, the court's only role is to ensure that

the agency took a "hard look" at environmental consequences. *Id.*

■ The Tenth Circuit recently described the standard of review which a court is to apply to an agency's Environmental Assessment and the decision to prepare a FONSI rather than an EIS. In *Committee to Preserve Boomer Lake Park v. Department of Transportation,* 4 F.3d 1543 (10th Cir.1993), the Tenth Circuit stated that courts should apply the deferential "arbitrary and capricious" standard, and that the burden is on the plaintiff to establish that the agency's decision was arbitrary and capricious. In this regard, the court laid out a two-prong test: "'"whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."'" *Id.* at 1555 (*quoting Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989) (*quoting Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971))). The court concluded that "[t]his inquiry must be searching and careful, but the ultimate standard of review is a narrow one." *Id.* Finally, under the APA, the review of the agency's decision is limited to the agency record. 5 U.S.C. § 706. As such, the reviewing court is generally not empowered to conduct a de novo inquiry into the matter and to reach its own conclusions. Rather, the court is to apply the appropriate standard to the record which was before the agency when it made its determination, and evaluate whether the agency's determination was arbitrary and capricious.

■ In this case, in addition to reviewing the record before the lead agency USDA Forest Service, the Court heard evidence presented by both parties with respect to what was before the agency and the reasonableness and rational basis for its determinations. Based upon all of the evidence, measured by the narrow standard of review under the APA, this Court determines that the EA is rationally based, that the agency took

---

1. NEPA does not provide a private right of action for violations of its provisions. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 882–83, 110 S.Ct. 3177, 3185–86, 111 L.Ed.2d 695 (1990). Therefore, plaintiffs' NEPA claims must pass muster under the judicial review provisions of the APA.

the necessary "hard look" at environmental consequences, and that its determination was not arbitrary or capricious. Therefore, a full EIS is not mandated.

 With respect to the requested issuance of a preliminary injunction, this Court determines that if an injunction issues at this time, the forest in Sidney Valley will be irreparably harmed, and that if no injunction is issued at this time, plaintiffs will not suffer irreparable harm because the epidemic infestation of bark beetles likely will destroy the mature, old-growth spruce if no action is taken. The Forest Service's Proposed Action presents a reasonable chance of success so as to preserve a portion of the old-growth trees. Further, this Court finds that the balance of harms is weighted in favor of defendants and against plaintiffs, and that it would be contrary to the public interest to grant a preliminary injunction at this time. Finally, because this Court has determined that a full EIS is not required at this time and that the EA and FONSI are rationally based and not arbitrary or capricious, the Court determines that plaintiffs are not likely to prevail on the merits.

There is one caveat. In the event that natural conditions—such as a dry, cold winter in 1995–96—should intervene and eliminate the epidemic nature of the beetle infestation prior to anticipated logging actions next season, on a proper showing such logging actions could be determined to be unnecessary because of such changed conditions. Accordingly, the Court recommends that the Forest Service include a condition in yet unexecuted logging contracts for next season to the effect that if the Forest Supervisor or the Court should determine at any time during 1996 that because of the cold and dry temperatures during the winter of 1995–96, or because of other natural phenomena, a material change of condition has come about so as to render implementation of the Proposed Action no longer necessary or desirable, further cutting or logging action shall be suspended or discontinued.

For all of the aforesaid reasons, together with the determinations set forth in the Findings of Fact and Conclusions of Law, this Court denies injunctive relief at this time.

Accordingly, it is hereby

**ORDERED**, that plaintiffs' Motion for Preliminary Injunction is **DENIED**.